IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | | |
|---|---|---|
| ALEXANDER L. BAXTER, | ) | |
| | ) | |
| Plaintiff, | ) | No. 3:15-cv-19 |
| | ) | |
| v. | ) | Judge Sharp |
| | ) | Magistrate Judge Knowles |
| SPENCER HARRIS, et al. | ) | |
| | ) | JURY DEMAND |
| Defendants. | ) | |
| | ) | |

## OFFICER BRAD BRACEY'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(C).

Officer Brad Bracey moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) because he is entitled to qualified immunity. The complaint fails to allege sufficient facts that Officer Bracey failed to intervene during the use of another officer's K-9 police dog. Officer Bracey did not know that the K-9 would be used and did not have the opportunity or the ability to stop the use of the K-9. Additionally, the complaint does not establish that Officer Bracey's actions violated any clearly established right of the Plaintiff. For these reasons, Officer Bracey is entitled to judgment on the pleadings.

### FACTS AS ALLEGED IN THE COMPLAINT

Plaintiff Alexander Baxter ("Plaintiff") alleges that during the course of an arrest he ran away from the police and hid in the basement of a house. (Complaint, Docket No. 1). Following the Plaintiff, Officer Spencer Harris and Officer Bracey entered the basement with a K-9 dog. *Id.* The K-9 ran around the basement looking for Plaintiff. Once the Officers found Plaintiff he sat "frozen still" on the ground. *Id.* The K-9 went up to Officer Harris and they stood in front of Plaintiff while Officer Bracey stood behind Plaintiff. *Id.* The K-9 continued to bark and "rear up"

at Plaintiff, while the Officers had their guns and flashlights trained on him. *Id.* Officer Harris then released the K-9 who bit the Plaintiff once in his arm pit. *Id.*

## LEGAL ANALYSIS

### I. STANDARD OF REVIEW

Fed. R. Civ. P. 12(c) permits a party "after the pleadings are closed but early enough not to delay trial" to move for judgment on the pleadings. The Court utilizes the same standard when ruling on a motion for judgment on the pleadings as it does when ruling on a defendant's motion to dismiss. *Northville Downs v. Granholm,* 622 F.3d 579, 585 (6th Cir. 2010). The Court is to "construe[s] the complaint liberally in the Plaintiffs' favor and accept[s] as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994). Regardless of the outlandishness or lack of independent support for a complaint's factual assertions, "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable."). The Court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Under the standard articulated in *Bell Atlantic Corp. v. Twombly*, a complaint must allege "enough facts to state a claim to relief that is plausible on its face" to withstand a Fed. R. Civ. P. 12(b)(6) motion to dismiss. 550 U.S. at 570. Furthermore, the Supreme Court reaffirmed and clarified *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). In *Iqbal*, the Court stated that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. And "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it

2

'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

## II. QUALIFIED IMMUNITY

Officer Bracey is entitled to qualified immunity insofar as Plaintiff has not alleged a viable constitutional claim against him. Plaintiff bears the burden "prov[ing] two factors to show that [these] government official[s are] not entitled to qualified immunity from [t]his suit: (1) that the facts as alleged by him show a violation of a constitutional right; and (2) that such violated right was clearly established." *LeMarbe v. Wisneski*, 266 F.3d 429, 434 (6th Cir. 2001); *Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2006). "Under the doctrine of qualified immunity, government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Caudill v. Hollen*, 431 F.3d 900, 911 (6th Cir. 2005) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Rights at issue must be clearly established, not just in the abstract sense, but in a particularized sense." *Id*. In fact, the Supreme Court has noted that, although qualified immunity "do[es] not require a case directly on point, [ ] **existing precedent must have placed the statutory or constitutional question beyond debate**." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (emphasis added).

In determining whether qualified immunity applies, courts employ a two-part test: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008). The court has the discretion to determine which of the qualified immunity prongs to examine first. *Pearson v. Callahan*, 555 U.S. 223, 235 (2009). "'The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made

3

as to the legal constraints on particular police conduct.'" *Dorsey*, 517 F.3d at 394 (quoting *Saucier v. Katz*, 533 U.S. 194, 205 (2001)). "The doctrine protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

### III. OFFICER BRACEY DID NOT KNOW THAT THE K-9 WOULD BE USED AND DID NOT HAVE THE OPPORTUNITY TO PREVENT THE ATTACK. THUS, HE DID NOT VIOLATE PLAINTIFF'S CONSTITUTIONAL RIGHTS BY FAILING TO INTERVENE.

Plaintiff appears to be bringing a "failure to intervene" claim against Officer Bracey, who was positioned behind Plaintiff when the K-9 attacked. The complaint is completely devoid of any facts that would allow this Court to find it plausible that Officer Bracey knew that the K-9 would be released or that he had the opportunity to prevent the K-9 from biting Plaintiff. Thus, Officer Bracey is entitled to qualified immunity because the complaint fails to adequately allege a constitutional violation.

In order to hold an individual officer liable for the use of excessive force, a plaintiff must prove that the officer "(1) actively participated in the use of excessive force, (2) supervised the officer who used excessive force, or (3) owed the victim a duty of protection against the use of excessive force." *Turner v. Scott,* 119 F.3d 425, 429 (6th Cir.1997). "As a general rule, mere presence ..., without a showing of direct responsibility for the action, will not subject an officer to liability." *Ghandi v. Police Dep't of City of Detroit,* 747 F.2d 338, 352 (6th Cir.1984). However, an individual officer may be held liable for failure to prevent the use of excessive force where "(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Turner,* 119 F.3d at 429. "Each defendant's liability must be assessed individually based on his own actions." *Binay v. Bettendorf,* 601 F.3d 640, 650 (6th Cir.2010).

4

The only three facts pleaded related to Officer Bracey are that: 1) he entered the basement with Officer Harris and the K-9, 2) he was **not** in control of the K-9 and 3) he was standing behind Plaintiff when the K-9 bit Plaintiff. The complaint contains no factual allegations that Officer Harris issued a warning prior to releasing the K-9 or even gave any indication that the K-9 would be used. The absence of those facts alone entitles Officer Bracey to judgment as a matter of law. Furthermore, the complaint alleges that Plaintiff had surrendered and was "frozen still" while the Officers pointed their guns and flashlights at him. Under these circumstances, it would have been impossible for Officer Bracey to predict that Officer Harris would then deploy a K-9 dog. Because Officer Bracey did not know that the K-9 would be used, he cannot be liable for failing to prevent it from happening.

In addition, Plaintiff has pleaded no facts to support the notion that, once Officer Harris deployed the K-9, Officer Bracey had either the opportunity or means to prevent the K-9 from biting Plaintiff. As a practical matter, Officer Bracey was not the K-9's handler and there is no reason to speculate that he could have done anything to prevent the dog's attack. *See Dickinson v. City of Kent,* 2007 WL 1830744, at *8 (W.D. Wash. June 25, 2007) (granting summary judgment to bystander officer on qualified immunity grounds when he was not involved with the dog's release and was not the dog's handler). Officer Bracey is entitled to qualified immunity because he lacked the knowledge that any force would be used against the Plaintiff and because he lacked the means or opportunity to prevent the K-9 from biting Plaintiff once he was used.

This case is analogous to *Dickinson v. City of Kent,* 2007 WL 1830744, at *1 (W.D. Wash. June 25, 2007), where the District Court for the Western District of Washington granted qualified immunity to the defendant officers on a failure to intervene claim involving the use of a K-9 because they were not involved in the decision to use the K-9 and, after the K-9 had been

5

deployed, they had no opportunity to recall him. In that case, the plaintiff and an acquaintance were approached by two officers while in their green pick-up truck and told not to drive because they appeared to be intoxicated. About an hour later, the police received a call reporting a possible DUI involving a green pick-up truck. *Id.* After the police stopped the truck, they ordered plaintiff and his acquaintance out of the car. *Id.* The acquaintance complied and Officer Henson proceeded to handcuff her. The plaintiff refused to comply and so one of the officers opened the passenger side of the truck. Another officer deployed a police dog and he pulled the plaintiff from the truck. After the dog had been released, Officer Bourne, a supervising officer, arrived on the scene. Among other theories and other defendants, plaintiff sued both Officer Henson and Officer Bourne on a failure to intervene claim.

  The Court first analyzed the actions of Officer Henson, who was present when the K-9 was released. In granting Officer Henson qualified immunity, the Court found significant that the Officer did not have any involvement with the plaintiff or with the release of the police dog. *Id* at *8. Simply put, the Court refused to make the leap of logic that just because the Officer was present he could have done anything to prevent the dog's attack. *Id.* at *8. "There is no reason to conclude that defendant Henson, who was not the dog's handler, could have done anything to prevent the dog's attack. Assuming otherwise would have been speculation, which is insufficient to create a genuine issue of material fact." *Id.* at *8.

  When examining the actions of Officer Bourne the Court noted "there is also no evidence that defendant Bourne had the time or ability to stop Jedi from biting plaintiff. As plaintiff's expert has opined, a 'properly trained patrol dog" should maintain a bite "until *commanded by the handler* to release.'" *Id.* at 8. Finding that Officer Bourne was not the dog's handler, did not arrive until after the dog had bitten plaintiff, and that there was no evidence that the dog would

6

have listened to Officer Bourne, the Court held "there is no reasonable basis to conclude that defendant Bourne could have done anything to prevent the dog's attack on plaintiff once it began. Plaintiff offers no evidence on this issue, only speculation, which is insufficient to create a genuine issue of material fact." *Id.* at *9.

In the case at bar, Plaintiff's mere assertion of the legal conclusion that "the officer behind had an opportunity to intervene and stop the attack." (Complaint, Docket No. 1) is not sufficient to state a claim against Officer Bracey. The complaint contains no facts that would permit this Court to infer that Officer Bracey had a reasonable opportunity to intervene. Instead, the facts as pleaded by Plaintiff are similar to the facts in *Dickinson* with regard to Officer Bracey's opportunity to intervene. No facts are pleaded that would suggest Officer Bracey had any involvement in the decision to release the K-9. In fact, the opposite is alleged. Officer Harris, the officer in front of Plaintiff, had control of the K-9 and then chose to release him. Likewise, the complaint is devoid of facts that could lead this Court to infer that the K-9 would have responded to a command from Officer Bracey. Accordingly, Plaintiff's failure to intervene claim against Officer Bracey fails.

### IV. OFFICER BRACEY IS ENTITLED TO QUALIFIED IMMUNITY BECAUSE THE RIGHT OF THE PLAINTIFF WAS NOT CLEARLY ESTABLISHED.

Even if the complaint did allege facts sufficient to allege a constitutional violation by Officer Bracey, he is still entitled to qualified immunity because his conduct, as alleged, did not violate any clearly established constitutional or federal right to which Plaintiff was entitled.

A government official will be liable for the violation of a constitutional right only if the right was "'clearly established ... in light of the specific context of the case.'" *Binay v. Bettendorf,* 601 F.3d 640, 651 (6th Cir.2010) (quoting *Scott,* 550 U.S. at 377, 127 S.Ct. 1769). A right is clearly established if "[t]he contours of the right [are] sufficiently clear that a reasonable

7

official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *see Grawey v. Drury,* 567 F.3d 302, 313 (6th Cir.2009) ("The key determination is whether a defendant moving for summary judgment on qualified immunity grounds was on notice that his alleged actions were unconstitutional."). Thus, "there are 'limitations upon the extent to which a court may rely on holdings in contexts other than the one being considered to demonstrate that a principle has been clearly established.'" *Andrews v. Hickman Cnty.,* 700 F.3d 845, 853 (6th Cir.2012) (quoting *Ohio Civil Serv. Emps. Ass'n v. Seiter,* 858 F.2d 1171, 1176 (6th Cir.1988)).

Nonetheless, a case "directly on point" is not required. *al-Kidd,* 131 S.Ct. at 2083. The Sixth Circuit has held that there may be instances where "'[g]eneral statements of the law' are capable of giving clear and fair warning to officers even where 'the very action in question has [not] previously been held unlawful.'" *Smith v. Cupp,* 430 F.3d 766, 776–77 (6th Cir.2005) (quoting *Anderson,* 483 U.S. at 640, 107 S.Ct. 3034); *see also Walker,* 649 F.3d at 503–04. Some violations of constitutional rights are so obvious that a "materially similar case" is not required Ap160 L.Ed.2d 583 (2004). In determining whether a right was clearly established, a court looks first to decisions of the Supreme Court, then to the Sixth Circuit's precedents, and then to decisions of other courts of appeal, and then asks whether these precedents "placed the ... constitutional question beyond debate." *al-Kidd,* 131 S.Ct. at 2083; *see Andrews,* 700 F.3d at 853.

In this instance, counsel has located no authority from the United States Supreme Court, the United States Court of Appeals for the Sixth Circuit, or district courts within the Sixth Circuit addressing the issue of what duty an officer owes to stop the release of another officer's K-9. And the case most closely on point, the *Dickinson* case out of the Western District of

8

Washington discussed at length above, does not "place the constitutional question beyond debate" and could not have placed Officer Bracey on notice that his actions were unconstitutional. Indeed, the opposite is true. In *Dickinson,* the Court approved of behavior similar to Officer Bracey's as not being a constitutional violation. Officer Bracey is entitled to qualified immunity.

## CONCLUSION

The complaint fails to allege sufficient facts that Officer Bracey violated Plaintiff's constitutional rights by not intervening when a fellow officer deployed a K-9. Additionally, there was no clearly established case law that could have put Officer Bracey on notice that his actions violated the Constitution. Therefore, Officer Bracey requests that a judgment be entered in his favor on qualified immunity grounds.

Respectfully submitted,

THE DEPARTMENT OF LAW OF THE
METROPOLITAN GOVERNMENT OF
NASHVILLE AND DAVIDSON COUNTY
SAUL SOLOMON (#11689)
DIRECTOR OF LAW


/s/Melissa Roberge
Keli J. Oliver (#21023)
Melissa Roberge (#26230)
Assistant Metropolitan Attorneys
108 Metropolitan Courthouse
P.O. Box 196300
Nashville, Tennessee 37219

9

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was delivered via U.S. Mail to the following:

Alexander L. Baxter
#68360
Davidson County Sheriff's Office
P.O. Box 196383
Nashville, TN 37219-6383

on the 25th day of March, 2015.

/s/Melissa Roberge
Melissa Roberge