IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

RECEIVED
IN CLERK'S OFFICE

NOV 1 5 2017

U.S. DISTRICT COURT
MID. DIST. TENN.

ALEXANDER L. BAXTER              )
                                )
                                )
                                )          Case No. 3:15-cv-00019
v.                              )
                                )
SPENCER HARRIS, et al.          )
                                )

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT

### Introduction

This is a 42 U.S.C. 1983 Civil Rights Complaint filed by Alexander L. Baxter, an inmate presently incarcerated at the Trousdale Turner Correctional Complex (TTCC) located in Hartsville, Tennessee.

The plaintiff, acting pro se, filed this action against Officers Spencer Harris and Brad Bracey, respectively, for the use of excessive force and failing to intervene; which violated the plaintiff's constitutional rights. In addition, the plaintiff invoked the Court's supplemental jurisdiction under Title 28, U.S.C., §1367, for the criminal action of assault and/or aggravated assault.

The plaintiff seeks relief for compensatory damages in the amount of $100,000; and for punitive damages in the amount of $100,000; as well as for any special damages that the Honorable Court may find proper and just. The plaintiff has suffered serious physical injury, pain and suffering,

PERMANENT SCARRING, back injury, MENTAL anguish, EMOTIONAL distress, PERSONAL humiliation, flashbacks, and a mysterious ailment that has ENTERED the plaintiff's body since the attack. The plaintiff is IN NEED of long-teRm treatment, and the plaintiff seeks accountability for his state law claim(s).

To the best of the plaintiff's understanding, Defendant Harris and Defendant Bracey have both filed a motion for summary judgment. Officer Harris seeks to have the case dismissed because "... Officer Harris' actions did not constitute EXCESSIVE force and no clearly established law holds that it does..." SEE: Document #99, Pg. 2. Officer Bracey seeks to have the case dismissed because "...he lacked any meaningful opportunity to intervene..." Document #99, Pg. 2. Both are claiming qualified immunity.

But the plaintiff submits that the defendants are not entitled to summary judgment because there are genuine issues of disputed facts that merit a trial. Summary judgment for the defendants is also improper because the defendants have not complied with the plaintiff's discovery requests and the plaintiff has not completed discovery, have failed to establish the necessary facts and sufficient evidence as required by the Rules, and there exists no adequate evidentiary basis for it, that they are not immune from liability, that there claim and/or claims are barred by the Rules

of Res judicata and collateral estoppel, and that both Defendant Harris and Defendant Bracey have committed perjury and/or aggravated perjury before this Court and before the Sixth Circuit Court of Appeals.

## Argument

As a threshold matter, the plaintiff respectfully requests that his pleadings be "liberally construed" as is allowed by holding in the United States Supreme Court in Haines v. Kerner, 404 u.s. 519 (1972). As stated so eloquently in Jacobsen v. Filler, 790 F 2d:

> "It is the element of choice which most clearly distinguishes the pro se prisoner cases from the suit at bar. The leading fair notice prisoner case, Hudson v. Harden, first acknowledged that 'in the ordinary civil case, the appellant's failure to respond by affidavit might have warranted the entry of summary judgment against.' However, Hudson concluded that an exception should be made for a prisoner unrepresented by counsel who, because of the 'handicaps detention necessarily imposes upon a litigant.' He probably would be unable to retain counsel even if he had the means to do so."

The Jacobsen decision went on to point out that, "The large numbers of unpublished decisions involving prisoners appearing in forma pauperis," as the plaintiff has done, "supports the decision that an inmate choice of self-representation is less than voluntary; and when that unwilling self-representation is coupled with further

obstacles placed in a prisoner's path by incarceration, for example, his limited access to legal materials, and to sources of proof, it seems inappropriate to apply the requirements of the summary judgment rule with less than strict liberalness."

It has been the plaintiff's position all along that the defendants have continued to erect procedural barriers; to use dilatory tactics, and to take advantage of the plaintiff's pro se status. To that end, <u>HAINES v. KERNER</u> however requires the plaintiff's pleadings to be held to less than stringent standards required by an attorney, and allows his pleadings to be liberally construed.

a) <u>There Are Genuine Issue Of Material Fact That Preclude The Granting Of Summary Judgment For The Defendants.</u>

Summary judgment is to be granted only if the record before the court shows "that there is no issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. A "material fact is one that "might affect the outcome of the suit under governing law." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248; 106 S.Ct. 2505.

The affidavit, the declarations, and the pleadings of the plaintiff are in squarely contradictory facts to what the defendants are claiming. The facts as pleaded to, testified to, and sworn to by the plaintiff portray a completely needless use of force because the plaintiff had surrendered, had his hands raised in the air, was completely passive, did nothing to provoke any force, was sitting on the ground, frozen still, with his hands raised in the air.

The factual dispute is also material. Under governing law, "In order to determine whether or not qualified immunity applies in an excessive force claim, the Court must engage in a two-step inquiry, addressing the following questions: (1) whether, considering the allegations in a light most favorable to the injured party, a constitutional right has been violated, and if so, (2) whether that right was clearly established." Campbell v. City of Springboro, 700 F.3d 779 (6th Cir. 2012).

We have held that a police officer may be held liable for failing to intervene to protect a person from the excessive use of force under the Fourth Amendment if: "(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." Turner v. Scott, 119 F.3d 425, 429 (6th Cir. 1977).

In assessing claims of excessive use of force, courts apply an objective reasonableness standard, considering the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether the suspect was actively resisting arrest or attempting to evade arrest by flight. See: Campbell, 700 F.3d at 786-87. The plaintiff's complaint alleges that he hid in a basement to avoid arrest but was soon discovered by Harris and Bracey as a canine searched the other side of the basement. Bracey was positioned behind the plaintiff, who sat on the ground with his arms in the air. These facts could support a finding that the

officers were in no danger and that the plaintiff was neither actively resisting nor attempting to flee. Taken in a light most favorable to the plaintiff, the allegations thusly establish that excessive force was being used when the canine attacked, and that Bracey was in a position to observe the use of excessive force.

In addition to the above, and in sharp conflict to what the facts are as fabricated by the defendants, the plaintiff received more than "one" puncture wound, or a "scratch" as previously claimed. What the defendants have held back in discovery are the electronic images and/or the pictures of the plaintiff's wounds uploaded each day as the plaintiff received daily chronic care for his wounds while at the Metropolitan Davidson County Sheriff's Office.

Obtaining that discovery has become that much more critical because the pictures, which don't lie, show a sharp contrast as pleaded by the defendants. Also, during the deposition, the plaintiff offered to take his shirt off to show counsel for defendants the permanent scares under the pit of his arm, but she declined. Counsel cannot just withhold discovery that relevant to the case, then raise it as a factual issue to get summary judgment. The evidence is in the electronic images first requested by the plaintiff back in March 2015, two-and-a-half years ago, the complete medical report, and the permanent scares on the plaintiff's body. It could also be in the testimony of the first responders, if granted.

The next inquiry is whether the right to protection against the use of excessive force was clearly established at the time. "To determine whether a constitutional right is clearly established, we must look first to decisions of the Supreme Court, then to the Sixth Circuit Court of Appeals, our district, and finally to decisions of other circuits." Brown v. Lewis, 779 F.3d 401, 418-19 (6th Cir. 2015). A right is "clearly established" if its contours are "sufficiently clear that a reasonable officer would understand that what he is doing violates that right." Harris v. City of Circleville, 583 F.3d 356, 366-67 (6th Cir. 2009).

The right to be free from the excessive use of force in the context of police canine units was clearly established by 2012, when in Campbell the Court held that officers who used an inadequately trained canine, without warning, to apprehend two suspects who were not fleeing, acted contrary to clearly established law. See: 700 F.3d at 789. The right to intervention to prevent the use of excessive force was also established. See: Turner, 119 F.3d at 429.

As the Sixth Circuit stated, "... Baxter had raised several issues of material fact that counseled against ... granting qualified immunity, whether Baxter had already surrendered when the canine was released, whether Bracey could have intervened, and whether Bracey lied in his police report summarizing the events of the arrest..." Both defendants, this time, have raised the strickly legal question of whether

the facts alleged in the complaint establish a violation of a clearly established Fourth Amendment Right to protection against the use of excessive force.

The Fourth Amendment protects persons from the use of excessive force by law enforcement officers in the course of an arrest, investigatory detention or other seizure. Moreover, police use of force is almost always analyzed under the Fourth Amendment "Reasonableness" standard which governs "all claims that law enforcement have used excessive force in the course of an arrest." Graham v. Conner, 109 S.Ct. 1865.

In addition to the above, qualified immunity is not possible when there are disputed facts that must be resolved in order to decide qualified immunity, or if one of the parties have requested a jury trial. In such a situation, most courts will submit the factual issues to the jury's factual findings.

The plaintiff sat on the ground, frozen still, with his hands raised in the air. Officer Harris stood in front of the plaintiff, while Officer Bracey stood behind. With both hands and both arms raised high in the air, the plaintiff was looking at both officers looking at him. All either officer had to do was put the handcuffs on the plaintiff. The plaintiff had completely surrendered. But with the plaintiff sitting passively on the ground the defendants waited until the canine unit joined them. As the plaintiff sat there with both hands raised another five or ten seconds passed before Officer Harris let the dog go. It was done sadistically, maliciously, intentionally and with malice. Summary judgment is improper.

In addition to the above, personnel may be held liable for there failure to act if it results in a constitutional violation. Estelle v. Gamble, 97 S.Ct. 285; <u>Alexander v. Perrill</u>, 916 F.2d 1392, 1395 (officials "can't just sit on your duff and not do anything" to prevent violations of rights); <u>Lewis v. Mitchell</u>, 416 F. Supp. 2d 935, 945 (a person may be held liable under §1983 if he "omits to perform an act which he is legally required to do that causes the deprivation of which plaintiff complains)." quoting <u>Johnson v. Duffy</u>, 588 F.2d 740, 743.

Finally, however, under the Fourth Amendment, a plaintiff need not show malicious intent because the officers' state of mind is not important. The question is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." <u>Graham v. Connors</u>, 490 U.S. 397.

b) <u>Summary Judgment Should Be Denied Because The Defendants Have Not Provided Disclosures In Discovery.</u>

Rule 26(b)(1) provides as follows: "Unless otherwise limited by court order, the scope of discovery is as follows: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense — including the existence, description, nature, custody, and location of any documents or other tangible things and the identity and locations of persons who know of any discoverable matter. For good cause, the court may order

discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence ... "

In addition to the above, Rule 56(d) provides as follows: "If a non-moving party shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."

On or about March 31, 2015, the plaintiff first requested the following: "(1) Disclosure of any and all civilian complaint(s) made against the defendants, as well as disclosure of any and all incident report(s) of excessive force made against the defendants." This request was made in addition to the other discovery requests that were never disclosed.

On January 21, 2017, the plaintiff made the following request for disclosures: "(2) Produce and disclose any and all civilian complaint(s) made against the defendants. Such disclosure requests production of any and all personnel complaint(s) or report(s), disclosure and production of any and all misconduct report(s), name(s) and statement(s) of any and all witness(es), in addition to the finding(s) and result(s) and conclusion(s) of any report(s). This request should include disclosure and production of all complaints made against the defendants by the plaintiff, in addition to all supervisor responses made from the complaints."

Another request made by the plaintiff is as follows: "(7) Produce the complete medical file in the possession, custody and control of the Metropolitan Nashville Davidson County Sheriff's Office and its inmates' health care provider. Production should specifically include the electronic stored images (pictures) that were taken each time by digital camera and uploaded immediately into the computer system throughout the plaintiff's treatment, show pictures of the plaintiff's wounds as he received daily chronic care treatment for his injuries. The file should include the names of all the nurses and staff who treated the plaintiff."

Be it two-and-a-half years ago, or just ten months ago, the defendants have not disclosed the requested materials, and both requests were made each time. Defendants' Response to Number 7 was as follows: "RESPONSE. As previously stated, the Defendants would not be the custodians of any such records, to the extent that they exist, or have any of the referenced documents in their possession."

A court should not grant summary judgment against a party who has not had an opportunity to pursue discovery or whose discovery requests have not been answered. Ingle v. Yelton, 439 F.3d 191, 196. "... where the facts are in the possession of the moving party, a continuance of a motion for summary judgment should be granted as a matter of course." Costlow v. U.S. 552 F.2d 560

At first the defendants pleaded that the plaintiff received only minor injuries, or a "scratch", so the plaintiff was not entitled to any relief. Fast-forward to the present, now the defendants are pleading that all the plaintiff received was one puncture

wound. That in and of itself creates genuine issue of material fact.

The plaintiff received much more than just a scratch or only one puncture wound. After the plaintiff was treated and released from Meharry Emergency, the plaintiff was transported by the police to the Criminal Justice Center (CJC). The plaintiff's entire left shoulder was bandaged, so the very next morning the plaintiff was called to the clinic to have the bandages changed. This procedure, the changing of the bandages, went on every single day for months. The pictures, in addition, were uploaded into the computer from the very first visit up and until months later when the plaintiff was cleared by the doctor to remove the bandages.

The defendants cannot withhold this relevant evidence, and then try to use its deprivation thereof as support for summary judgment. Moreover, the plaintiff's account of the attack is in square conflict with the defendant's account. Summary judgment should not be granted.

In addition to the above, the defendants have refused to disclose plaintiff's Request #2, requesting prior histories. Their response has been as follows: "RESPONSE: Objection. The request is not relevant and is not reasonably calculated to lead to the discovery of admissible information. There is no municipal liability claim against the Metropolitan Government; the only claims are against the individual officers for this singular alleged use of excessive force. The officers' complaint histories are thus relevant. Further objection is made on the grounds that these Defendants would not be the custodians of

any such records, to the extent that they exist, or have any of the referenced documents in their possession. This request would more properly served on the Metropolitan Government through a subpoena."

To begin with, this will be a credibility issue, and there will be conflicting testimony. The plaintiff's account of the assault will be in sharp conflict with the defendants.' The defendants, in addition, enjoy complete and unfettered access to the plaintiff's histories. The existence of credibility issues and conflicting testimony requires the disclosure of this relevant material. The defendants are not entitled to summary judgment.

c) <u>The defense of qualified immunity is barred by the doctrines of res judicata and collateral estoppel.</u>

To the best of the plaintiff's understanding, res judicata generally means you cannot bring a claim if there has already been a judgment on the merits of the same action by a court of competent jurisdiction. This Court, as well as the Sixth Circuit Court of Appeals, are courts of competent jurisdiction.

Collateral estoppel is the principle that a party cannot relitigate particular factual or legal issues which were litigated or decided in a prior decision. In other words, collateral estoppel serves to bar relitigating factual or legal issues that arose from the same occurrence. The plaintiff submits that the defense of qualified immunity is barred by the doctrines of res judicata and/or collateral estoppel.

The complaint was first filed on January 7, 2015, and on March 21, 2015, the Court entered its initial Order acknowledging receipt and granting application to proceed in forma pauperis. In that Order, the Court entered as follows: "... The plaintiff claims that on January 8, 2014, the defendants watched as a K-9 dog attacked him after he had surrendered to police. The alleged use of excessive force by a police officer is actionable under 42 U.S.C. §1983..."

An amended complaint deleting "John Doe" as a defendant and clarifying Officer Harris as the one who released the dog, and on April 17, 2015, the Court granted plaintiff's leave to amend. The defendants filed their answer to the amended complaint on July 24, 2015, and on July 24, 2015, also, Defendant Bracey filed his Motion to Dismiss. It was in that motion to dismiss is where the defense of qualified immunity began, and where Officer Bracey raised the defense that "no clearly established right" of the plaintiff had been violated. Now they want the Court to relitigate the same exact argument (defense) and grant summary judgment.

Document #37, Page 1: "... Officer Bracey moves for all claims against dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because he is entitled to qualified immunity..." Officer Bracey also raised the defense that "... complaint does not established that Officer Bracey's action violated any clearly established right of the plaintiff..."

The Court entered its Report & Recommendation on September 15, 2015, and on September 30, 2015, defendants filed their objection. In that pleading, located on Page 2, Defendant Bracey pleaded as follows: "... there is no clearly established law putting Officer Bracey on notice that he could be deemed to violate the Fourth Amendment if he did not intervene in the release of a K-9 for whom he was not the handler..."

On November 9, 2015, the Court entered its Order adopting the Report & Recommendation and denying defendants relief. It was on December 8, 2015, that Defendant Bracey filed his Notice of appeal to the United States Court of Appeals for the Sixth Circuit. Document 66, Page 1: "Notice is hereby given that Defendant Police Officer Brad Bracey appeals to the United States Court of Appeals for the Sixth Circuit from the district court's Order entered on November 9, 2015 that denied the Defendant's motion to dismiss based on the qualified immunity defense..."

On February 11, 2016, Officer Bracey filed his original brief to the Sixth Circuit. In that brief Officer Bracey stated as follows: "II. Officer Bracey is entitled to qualified immunity because there is no existing precedent that clearly establishes his duty to intervention in the K-9 apprehension." Page 17, Case No. 15-6412, and also in his Reply brief, filed March 3, 2016, Officer Bracey Raised the same exact defense that he brings today.

But on August 30, 2016, the Sixth Circuit entered its Order rejecting the defense raised by Officer Bracey and denying relief. Located on Page 4: "... The contours of a suspect's right to intervention to prevent a violent K-9 apprehension where officers were in no danger and the suspect was neither resisting nor fleeing were sufficiently clear that a reasonable Officer in Bracey's position would understand that doing nothing but watch a police canine attack would violate the suspect's constitutional rights. Under these circumstances, Bracey is not entitled to qualified immunity." Baxter v. Bracey, No. 15-6412 (6th Cir. 2016). The mandate was issued on September 22, 2016.

The point the defendant avers is that the doctrines of res judicata and/or collateral estoppel bars relief for any defendant because there has already been a judgment on the merits of the same action by a court of competent jurisdiction. In addition, neither of the defendants can relitigate factual or legal issues which have already been decided in a prior decision.

When the motion to dismiss was filed on July 24, 2015, Defendant Bracey asserted his right to do so. Defendant Harris chose, instead, not to do so. Officer Harris' decision not to pursue qualified immunity or that he did not violate any clearly establish right of the plaintiff was a tactical decision and the doctrines of res judicata and/or collateral estoppel now bars Defendant Harris from relitigating the same issues again.

Additionally, when Defendant Bracey filed his motion to dismiss on July 24, 2015, Officer Bracey raised the same exact defense with nearly the same exact factual and legal issues that were rejected by this Court as well as by the Sixth Circuit Court of Appeals. Thusly, the doctrines of res judicata and/or collateral estoppel bar relief because there has already been a judgment on the merits of the action by not one, but two courts of competent jurisdiction.

d) <u>Neither Defendant Harris nor Defendant Bracey is entitled to summary judgment because they both have committed perjury and/or aggravated perjury in their police reports, and their pleadings and declarations have been entered in bad faith.</u>

Neither Defendant Harris nor Defendant Bracey is entitled to summary judgment because they both have committed perjury and/or aggravated perjury in their police reports and their pleadings and/or declarations have been committed in bad faith. The following are statements taken from defendants' pleadings:

i) "... I deployed K-9 Iwo inside the basement of the residence..." "... I entered the location. K-9 Iwo found the suspect hiding behind a water heater and apprehended him..." "... K-9 Iwo located the suspect before I had a visual of where he was located..." "... I then commanded K-9 Iwo to release the suspect..." "... Officer Bracey came in the room and assisted in searching..." <u>MNPD, Supplemental Report, January 8, 2014, Spencer Harris, Employee ID No. 468058, Incident # 14-0026705.</u>

2) "... Upon my arrival, I went to the window and shouted the K-9 warning in the window and got no response from inside..." "... Officer Harris then got K-9 Iwo and entered the basement..." "... Once inside K-9 Iwo located the suspect. I could hear Officer Harris giving the suspect verbal commands to show his hands. Once the suspect complied it appeared all use of force ceased and I entered the basement. Officer Harris was standing next to the suspect holding K-9 Iwo away from the suspect while the suspect was on his back..." <u>MNPD, Supplemental Report, January 8, 2014, Brad Bracey, Employee ID 426467, Incident No. 14-26705.</u>

3) "... First, K9 Iwo and then Officer Harris entered the basement while Officer Bracey remained outside. Plaintiff remained hidden. Officer Bracey remained outside the basement until, based on Officer Harris's statements, it became evident that K9 Iwo had apprehend the Plaintiff and Plaintiff had surrendered. Upon entering the basement Officer Bracey saw Officer Harris holding K9 Iwo to keep him away from Plaintiff. Officer Bracey never used any force on the Plaintiff and was not present when Officer and K9 Iwo apprehended the Plaintiff ..." <u>Baxter v. Harris,</u> No. 3:15-cv-00019, Document #81, Page 2.

4) "... 10. After giving additional warnings, Officer Harris and K9 Iwo entered the building. K9 Iwo entered first and then Officer Harris. While Officer Harris and K9 Iwo entered the basement I remained outside the basement window ..." <u>Baxter v. Harris,</u> No. 3:15-cv-00019, Document 81-1, Page 2. Declaration.

5) "... 11. After hearing Officer Harris state that Plaintiff had surrendered I entered the basement..." _Baxter v. Harris_, No. 3:15-cv-00019, Document 81-1, Page 2. Declaration.

6) "... 12. When I entered the basement Officer Harris had control of K9 Iwo and was keeping him away from the Plaintiff..." _Baxter v. Bracey_, No. 3:15-cv-00019, Document No. 81-1, Page 2. Declaration.

7) "... Plaintiff was lying on the floor... "_Baxter v. Harris_, No. 3:15-cv-00019, Document 81-1, Page 2. Declaration.

8) "... I never used any force on the Plaintiff and I was not present when Officer Harris and K9 Iwo apprehended Plaintiff, I was outside..." _Baxter v. Harris_, No. 3:15-cv-00019, Document No. 81-1, Page 2. Declaration.

In the defendants motion for summary judgment, both Defendant Harris and Defendant Bracey pleaded as follows: "... Officer Harris, as the K9 Iwo's handler, released the dog into the basement. After following in Iwo, Officers Harris and Bracey warily approached Baxter. At the time, Officer Bracey was positioned behind Baxter. Iwo bit Baxter once and secured him until Officer Bracey could place Baxter in handcuffs..." _Baxter v. Harris_, No. 3:15-cv-00019, Document 99, Page 1.

The plaintiff cannot locate any place in the Rules that allows a defendant to plead facts into the record of a federal court that are completely false, plead false facts into the record of the Sixth Circuit Court of Appeals, make sworn declaration to false facts, then alter those facts in a self-serving, convenient narrative to obtain summary judgment.

# Conclusion

Nearly four years ago the plaintiff was a homeless man, unemployed, sick, and living on the street at the time. It was January 8, 2014, and during the past 72 hours nighttime temperatures in Nashville had plunged to near zero. Daytime temps barely rose above freezing. There was snow on the ground.

On the night before the incident the plaintiff had slept out in the cold, and because of the frigid temperatures the plaintiff had nearly frozen to death. Early that morning the plaintiff had gone downtown asking for help. Once the plaintiff arrived at this resource office he was given some food and allowed to sit in the waiting area for a few hours to warm up. Plaintiff was given a case manager.

But eventually the plaintiff had to leave. The cruel reality is that the plaintiff had no money, no place to go, and the rough night before as well as the difficult walk downtown had taken a toll on the plaintiff's body. And it was cold outside, freezing cold, so it didn't take long for the pain to return and frostbite take over.

Perhaps it doesn't matter much to some the plaintiff would like the Court to know that he is extremely remorseful and extremely shameful of his life. Yet even though there was no violence involved, nobody hurt, nobody threatened, no property damage done at all, and the few things taken, like the unopened bottle of Jack Daniels whiskey, all were immediately returned to their owners, the plaintiff was given a difficult sentence for his crime. Every year becomes more difficult when one's approaching their sixtieth birthday.

But where the criminal action ends, the civil action begins. When Officer Harris and Officer Bracey located the plaintiff they positioned themselves around the plaintiff — one was in front and the other was behind. Although the plaintiff had already surrendered, they allowed the K9 to run from the other side of the basement. Defendant Harris grabbed the K9 by the collar, and as it was barking and rearing up they looked back and forth at each other. There was some kind of communication going on between them.

When Officer Harris finally let the K9 go, all it had to do was lung and it was on the plaintiff. It latched on to the plaintiff's underarm and it wouldn't let go. It started jerking its head back and forth. Officer Bracey at one point sorta stepped backwards some to allow the dog better access. The officers totally ignored the screams and

pleas coming from the plaintiff. Officer Bracey made no attempt to tell the other officer to remove the dog or to stop what was going on. And they let the dog stay on the plaintiff for an extended period of time, as they stood and watched.

It was a huge German Shepard dog, and it snatched the plaintiff around like a haggard ragdoll. When Officer Harris removed the dog the plaintiff caught a glimpse. The dog's teeth, gums and snout was thick with the plaintiff's blood. It ripped the plaintiff open underneath his armpit, yet the defendants continue to tell the Court that all plaintiff received was a "scratch" or "one puncture wound."

Evidence includes the plaintiff's own testimony, the permanent scars on the plaintiff's body, the Meharry Hospital emergency room report, the plaintiff's medical file from January 8, 2014, up and until his chronic care ended at the Metropolitan Nashville Davidson County Sheriff's Office, the electronically stored images from DCSO, the police report filed by West Precinct Detective Anthony Chandler which includes a "summary of interview with Officer Spencer Harris, the "Use of Force" report filed by canine Sgt. ~~Spencer Harris~~ Chris Warner, the "Use of Force" report filed by Officer Spencer

Harris, the "Use of Force" report filed by Officer Brad Bracey, the audio CD made of the plaintiff by Detective Chandler, and more.

Summary judgment should be respectfully denied.

Respectfully submitted,

_Alex S. Baxter_ 11-3-17
Mr. Alexander L. Baxter, pro se.

## Certificate of Service

I, Alexander L. Baxter, do hereby certify that a true and exact copy of the foregoing has been forwarded, by u.s. mail, to:

Melissa Roberge & Keli Oliver
108 Metro Courthouse
P.O. Box 196300
Nashville, TN 37219-6300

_Alex Baxter_
11-3-17

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE


ALEXANDER L. BAXTER

v.

SPENCER HARRIS, et al.

No. 3:15-cv-00019

## STATEMENT OF DISPUTED FACTS
### DECLARATION

I, Alexander L. Baxter, acting under penalty of perjury, do hereby affirm and make declaration to the following disputed facts:

1) That Officer Harris filed a false police report;

2) That Officer Bracey filed a false police report;

3) That the plaintiff was not lying down;

4) That when Officer Harris and Officer Bracey located the plaintiff, the plaintiff was sitting on the ground, frozen still, with his hands raised in the air;

5) That the plaintiff had completely surrendered;

6) That the plaintiff was passively complying with the officers' commands;

7) That the plaintiff did nothing to provoke any force;

8) That there were no bites on the plaintiff's arms, no bites on the plaintiff's legs, no bites on the plaintiff's torso, no bites on hands, nor any other bite or scratch anywhere else on the plaintiff's body, except under the pit of his arm. That's because the plaintiff was sitting on the ground, frozen still, completely surrendered with his hands raised high in the air when Officer Harris released the dogs;

9) That the plaintiff was bit more than once under the pit of his arm;

10) That the plaintiff has permanent scars under his arm;

11) That after the attack the plaintiff received daily chronic care for his injuries;

12) That, as a result of the attack, there exists a medical file in possession of the Metropolitan Davidson County Sheriff's Office that lists the names of all the nurses and doctors who treated plaintiff;

13) That, beginning on January 8, 2014, there exists electronically stored images (pictures) uploaded into the computer system at DCSO and its inmates' health care provider;

14) That Officer Bracey did not handcuff the plaintiff but instead had to carry plaintiff to the window to waiting officers who placed handcuffs on the plaintiff

ONCE plaintiff was both pushed and pulled through the window and placed on the ground outside;

15) That Officer Harris saw plaintiff's hands raised in the air; and

16) That Officer Harris KNEW plaintiff had surrendered before he released the dog.

Respectfully submitted,

Alex L. Croft 10-3-17
Mr. Alexander L. Croft, pro se.

*Hill by Hill v. Miracle*, 853 F.3d 306, 312 (6th Cir. 2017) (internal quotation marks omitted). As

Bracey points out, Def.'s Resp. pp. 2–4, that is all he did.

Further, Bracey averred that he was not even in the basement when the alleged

attack occurred. Therefore, under Rule 56, there remains a genuine issue of material fact as to

whether he violated plaintiff's constitutional rights. Accordingly,

IT IS ORDERED that plaintiff's motion for summary judgment is denied.

s/ Bernard A. Friedman
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE
SITTING BY SPECIAL DESIGNATION

May 18, 2017
Detroit, Michigan



# Investigative Supplement Report

**Incident Number:** 2014-0026705
**Offence / Classification:** Burglary/K-9 Apprehension
**Reporting Detective:** Charles K. Taylor
**Date:** 01/18/14

On 01/08/14, I responded to a K-9 Apprehension involving a burglary suspect at 2110 Portland Ave. Once I arrived on the scene I spoke with patrol officers who directed me to an ambulance with the suspect Alexander Baxter. I mirandized the suspect before asking him questions. I asked him several question regarding the k-9 apprehending him, why was he caught breaking into the house. Mr. Baxter told me that he was a thief and would not hurt anybody. I explained to him that there were witnesses that saw him go inside the victim's home, even saw him enter the victim's vehicle. Mr. Baxter nodded his head as if he understood what I was saying. Mr. Baxter told me that he was homeless and was just trying to get some stuff to sell on the street. Mr. Baxter told me that he was trying to get enough money to get a room somewhere. The interview was recorded and given to Det. Chandler. (See CD for further details.)

While I was in the ambulance with Mr. Baxter I observed wounds he took from the K-9 apprehension. I observed a long scratch on his left shoulder, two small puncture wounds in his arm pit area.

_____

Det. Charles K. Taylor

M.P.D. FORM 104
(Rev. 6-00)
CALEA 82.2.1, 83.2.5...

**Supplement Report**

Metropolitan Police Department
Nashville, TN

| 1. Name | ☒ Arrestee | ☐ Driver No. 1 | ☐ Victim | 2. M.P.D. Incident No. |
|---|---|---|---|---|
| Baxter, Alexander | | | | 2014-0026705 |

| 3. Arrest No. | ☐ N/A | 4. Offense and Classification / Charge | | Changed ☐ Yes See Narrative | 5. Page No. 1 of 2 |
|---|---|---|---|---|---|

| 6. of Report Continued ☐ Accident ☐ Missing Person ☒ Arrest ☒ Follow-up or Supplemental | 7. Multiple Clear-up ☒ N/A ☐ Yes (If Yes, List Other Incident No's. and / or Victims in Narrative) ☐ No | 8. Further Police Action and Report Required ☐ Yes ☒ No | 9. Value of Property Recovered ☒ N/A $ |
|---|---|---|---|

**10. Narrative** ☐ N/A

On January 8th, 2014 at approximately 1430 hours a call went out for a burglary in progress in the area of 2110 Portland Avenue. A neighbor had observed a male black with a blue jacket, blue beanie cap, around 6'1" thin build just jumped a fence and forced a sliding glass door open on the residence. As I was driving to the location, dispatch updated the call with that the suspect was getting in a white vehicle. Air 1 arrived in the area a short time later and stated they observed the suspect going back inside the residence. I arrived in the area and Air 1 said the suspect was walking back towards the white vehicle, Air 1 gave the location of the white vehicle. I observed the white vehicle and stopped short of the entrance to the parking lot, as I was exiting my vehicle I observed a male black matching the suspect description take off running away from me. I began driving my vehicle again and observed the suspect jump a fence at the end of the apartment building. I then went to Fairfax and turned right and went up the next alley. Air 1 maintained visual of the suspect and stated he was in the drive before the alleyway I went down. I exited my vehicle and walked behind the house the suspect was last scene around. I did not see the suspect anymore.

Officer Alford arrived at the residence on Fairfax Avenue about the same time I did. He stated the suspect had not came out at the front of the residence and began looking around the residence and noticed a blue and yellow jersey laying on the ground next to the residence. I walked around and confirmed that the blue and yellow jersey matched what I observed the suspect wearing as he was running away. Officer Alford watched the window to the basement of the resi___ and I watched the windows on the other side of the residence, we requested K-9 to the scene and waited for them to arrive. Another officer went to the location at 2110 Portland Avenue to confirm that there was a burglary. I gave the address of the residence as 2111 Fairfax Avenue to dispatch and asked for dispatch to attempt to find a phone number for the owner and contact that person to come to the residence. No phone number was able to be located by dispatch. K-9 arrived on the scene and I maintained my place on the perimeter of the residence. At some point K-9 went into the basement and I heard on the radio that the suspect was in custody. I came around to the front of the residence and the K-9 Sgt. asked me to come with him. I did and we assisted the suspect with exiting the basement of the residence. Once the suspect was out of the residence I placed the suspect in handcuffs and walked him to Officer Cuthbertson's vehicle.

I stood by as Officer Finnegan searched the suspect. An ambulance was called to the scene to give medical assistance. Once medics were on the scene I removed the handcuffs from the suspect so medics could give medical assistance to suspect. Officer Finnegan and I walked the route the suspect was served running to locate any items the suspect may have thrown down. We were able to locate the blue jacket the suspect was wearing next to some trash can at the 2111 Fairfax Avenue and some car keys believed to be the victims in the drive I observed the suspect run down just before jumping the fence

| 11. Signature of Recipient / Authorizer: | 12. Advisory Notice Issued ☐ Domestic Violence Notice ☐ Citizen Information Notice | ☒ N/A ☐ Other |
|---|---|---|

| 13. Reporting Officer (Print Name: First, MI, Last) (Date/Time) son Baber  01/14/14 0800 | Employee No. Radio Call Sign 620066 1D75 | 17. Case Status |
|---|---|---|

| 14. Approving Supervisor (Signature) | Employee No. | ☐ Open ☐ Unfounded ☐ Cleared by Rptg. Officer ☐ Cleared by Arrest ☐ Inactive (Low Solvability) | Cleared by Exception (Select One Below) ☐ Death of Offender ☐ Prosecution Declined ☐ Extradition Declined ☐ Refused to Cooperate ☐ Juvenile, No Custody |
|---|---|---|---|

| 15. Reviewer | Employee No. | 16. Date/Time Reproduced | Employee No. | |
|---|---|---|---|---|

Case 3:15-cv-00019   Document 102   Filed 11/15/17   Page 29 of 42 PageID #: 0039

**Metropolitan Police Department** Nashville, TN

| 1. Name | ☒ Arrestee | ☐ Driver No. 1 | ☐ Victim | 2. M.N.P. D. Incident No. |
|---|---|---|---|---|
| Alexander Baxter | | | | 14-26705 |

| 3. Arrest No. ☒ N/A | 4. Offense and Classification / Charge | Changed ☐ Yes See Narrative | 5. Page No. 1 of 1 |
|---|---|---|---|
| | Agg Burglary | | |

| 6. Kind of Report Continued | 7. Multiple Clear-up ☒ N/A | 8. Further Police Action and Report Required | 9. Value of Property Recovered |
|---|---|---|---|
| ☐ ...dent ☐ Missing Person ☐ Arrest ☒ Follow-up or Supplemental | ☐ Yes (If Yes, List Other Incident No's. and/ ☐ No or Victims in Narrative) | ☐ Yes ☒ No | ☒ N/A $ |

**10. Narrative** — Record all developments in the case subsequent to the last report. Describe and record value of any property recovered. Clearly show disposition of recovered property and inventory no's. List names and arrest numbers of any persons arrested. Explain any offense / classification change and cite prior offense / classification. For multiple clearance information, list each case by incident number and respective victim(s). Record crime scene protection information.

☐ N/A

On 1-8-14, I responded to a residential burglary in the 2100 block of Portland Ave. Suspect was seen going in and out of the back of the residence. Aviation arrived at the scene and observed the suspect running from that location towards Fairfax. Ground units arrived in the area and aviation narrowed down the suspect's location to a specific home on Fairfax. Officers located a shirt the suspect had left next to a basement window. The ground was disturbed around the window and it appeared the suspect had gone inside the basement for concealment. Upon my arrival, I went to the window and shouted the K9 warning in the window and got no response from inside. I then advised K9 Sgt Warner that there was nothing in the basement and it was basicly a large crawl space, but there were several places the suspect could be hiding. Officer Harris then got K9 Iwo and entered the basement while giving the K9 warning again. Once inside K9 Iwo located the suspect. I could hear Officer Harris giving the suspect verbal commands to show his hands. Once the suspect complied it appeared all use of force ceased and I entered the basement. Officer Harris was standing next to the suspect holding K9 Iwo away from the suspect while the suspect was on his back. I had the suspect roll over and I checked him for weapons. I could feel a screwdriver in one of his pockets. I advised the suspect to get up and walk over to the window and he did so. Once there I called officers on the perimeter to me and the suspect was brought through the window. The officers outside then took the suspect into custody. Medcom, ID, a precinct detective and field captain were all notified by dispatch.

| 11. Signature of Recipient/Authorizer: | 12. Advisory Notice Issued |
|---|---|
| | ☐ Domestic Violence Notice ☒ N/A ☐ Citizen Information Notice ☐ Other |

| 13. Reporting Officer (Print Name: First, MI, Last) (Date/Time) | Employee No. | Radio Call Sign | 17. Case Status |
|---|---|---|---|
| Brad Bracey — 1-10-14/1630 | 462467 | 5255 | |
| 14. ...roving Supervisor (Signature) | Employee No. | | Cleared by Exception (Select One Below) |
| | 226918 | | ☐ Open ☐ Death of Offender ☐ Unfounded ☐ Prosecution Declined ☒ Cleared by Arrest ☐ Extradition Declined ☐ Refused to Cooperate ☐ Juvenile, No Custody |

| 15. Reviewer | Employee No. | 16. Date/Time Reproduced | Employee No. |
|---|---|---|---|
| | | | |

**Metropolitan Police Department** Nashville, TN

| 1. Name | ☒ Arrestee ☐ Driver No. 1 ☐ Victim | 2. M.P.D. Incident No. |
|---|---|---|
| Baxter, Alexander Leslie | | 14-0026705 |

| 3. Arrest No. ☒ N/A | 4. Offense and Classification / Charge | | Changed ☐ Yes See Narrative | 5. Page No. 1 of 1 |
|---|---|---|---|---|
| | Aggravated Burglary | | | |

| 6. Kind of Report Continued | 7. Multiple Clear-up ☒ N/A | 8. Further Police Action and Report Required ☐ Yes ☒ No | 9. Value of Property Recovered ☒ N/A $ |
|---|---|---|---|
| ☐ Incident ☐ Missing Person ☐ Arrest ☒ Follow-up or Supplemental | ☐ Yes (If Yes, List Other Incident No's. and/ ☐ No or Victims in Narrative) | | |

**10. Narrative** ☐ N/A

Record all developments in the case subsequent to the last report. Describe and record value of any property recovered. Clearly show disposition of recovered property and inventory no's. List names and arrest numbers of any persons arrested. Explain any offense / classification change and cite prior offense / classification. For multiple clearance information, list each case by incident number and respective victim(s). Record crime scene protection information.

I responded to assist officers on the scene of a burglary of a residence. Upon arrival I spoke with officers at the scene regarding the incident. Officers at the scene found a jersey sitting just outside of the entrance to the basement of a residence window which appeared that someone had broken into. Aviation had been following the suspect but did not see the suspect go any further past that area. I deployed K9 Iwo inside the basement of the residence that had been broken into by the suspect. Prior to my deploying my partner inside the location Officer Bracey shouted "Metro Police K9 come out now or a dog will be used to find you" and then the same warning was shouted by myself as I entered the location. K9 Iwo found the suspect hiding behind a water heater in the basement and apprehended him on the upper portion of his left arm. K9 Iwo located the suspect before I had a visual of where he was located. I could not immediately see the suspect's hands so I asked him to show me his hands. Once the suspect complied with commands I then commanded K9 Iwo to release the suspect. K9 Iwo released the suspect immediately and Officer Bracey came in the room and assisted with searching the suspect for any weapons and then turned him over to patrol. Medcom was called to the scene as well as the I.D. section and a station detective.

| 11. Signature of Recipient/Authorizer: | | 12. Advisory Notice Issued ☐ Domestic Violence Notice ☐ Citizen Information Notice | ☒ N/A ☐ Other |
|---|---|---|---|

| 13. Reporting Officer (Print Name: First, MI, Last) (Date/Time) | Employee No. | Radio Call Sign | 17. Case Status |
|---|---|---|---|
| Spencer R. Harris 01-08-14 1600 | 468058 | 5266 | ☐ Open |
| 14. Reviewing Supervisor (Signature) | Employee No. 226918 | | ☐ Unfounded ☐ Cleared by Rptg. Officer ☒ Cleared by Arrest ☐ Inactive (Low Solvability) |
| 15. Reviewer Employee No. | 16. Date/Time Reproduced | Employee No. | |

Cleared by Exception (Select One Below)
☐ Death of Offender
☐ Prosecution Declined
☐ Extradition Declined
☐ Refused to Cooperate
☐ Juvenile, No Custody

**USE OF FORCE REPORT**
M.P.D. FORM 108 (Rev. 10/2007)
CALEA 1.3.6



**METROPOLITAN POLICE DEPARTMENT**
NASHVILLE, TENNESSEE
Please Fax to Chief of Police (615) 862-7787

1. CONTROL NO. **U011414**

2. COMPLAINT NO. **14-0026705**

## EMPLOYEE INFORMATION

| EMPLOYEE'S NAME (Last, First, Middle) | EMP. NO. | RANK/CLASS | 4. RACE | 5. SEX | 6. AGE |
|---|---|---|---|---|---|
| Harris, Spencer , Ross | 468058 | POII | W | M | 34 |

| 7. HEIGHT | 8. WEIGHT | 9. EMPLOYEE'S ASSIGNMENT | 10. DATE/ TIME OF INCIDENT |
|---|---|---|---|
| 5'10 | 230 | BUREAU Special Operations SECTOR / DIVISION Tactical operations SECTION Canine | 01/08/14    1502 |

11. EXACT LOCATION OF INCIDENT (Address, Intersection, Zip Code)
**2111 Fairfax Ave Nashville TN 37212**

12. REASON FOR USE OF FORCE (Check all applicable)  ☐ IN SELF DEFENSE  ☐ IN DEFENSE OF OTHER(S)
☒ NON-COMPLIANCE TO COMMANDS  ☐ RESIST ARREST  ☐ ACCIDENTAL DISCHARGE  ☐ OTHER

13. WEAPON(S) AND/OR FORCE USED BY OFFICER (Check all applicable and describe the method of use in the narrative)

WEAPON, TYPE ...  ☐ FIREARM(S) (Type_____ Caliber_____ Serial no._____ Rounds expended_____)

☐ BATON/ASP  ☒ CANINE  ☐ CHEMICAL SPRAY  ☐ TEAR/CS GAS  ☐ TASER (COMPLETE M.P.D. FORM #108T)  ☐ VEHICLE  ☐ OTHER_____

PHYSICAL FORCE, TYPE ...  ☐ FOOT STRIKES  ☐ HANDSTRIKES  ☐ TAKEDOWN TECHNIQUES  ☐ WRESTLING/GRAPPLING  ☐ OTHER_____

14. OFFICER INJURIES (DESCRIBE THE SPECIFIC TYPE(S) AND BODY LOCATION OF INJURIES) *ATTACH COPY OF METRO GOVERNMENT FORM #101.

None

| | 14A. RECEIVED TREATMENT | 14B. RESULT OF FORCE USED |
|---|---|---|
| | ☐ YES  ☒ NO | ☐ YES  ☐ NO |

| 15. EMPLOYEE WAS WEARING | 16. DUTY STATUS (IF ON DUTY, MOVE ON TO # 20) | 17. IF OFF DUTY, WAS EMPLOYEE INVOLVED IN SECONDARY EMPLOYMENT |
|---|---|---|
| ☒ UNIFORM  ☐ PLAIN CLOTHES | ☒ ON DUTY  ☐ OFF DUTY | ☐ YES  ☐ NO |

18. WAS EMPLOYMENT AN EXTRA-DUTY JOB?    IF YES, IS M.P.D. FORM #150 ON FILE ?    EXTRA DUTY EMPLOYMENT WAS FOR ☐ OFFICE OF SECONDARY EMPLOYMENT
☐ YES  ☒ NO    ☐ YES  ☐ NO    ☐ CONTRACT SECURITY COMPANY  ☐ PROPRIETARY SECURITY ORGANIZATION

19. LIST NAME OF COMPANY AND ADDRESS (Street, City, State, & Zip Code)

## SUBJECT INFORMATION

| 20. SUBJECT'S NAME (Last, First, Middle) | ☐ JUVENILE | 21. SEX | 22. RACE | 23. ETHNICITY | 24. D.O.B. | 25. AGE | 26. HT. | 27. WT. |
|---|---|---|---|---|---|---|---|---|
| Baxter, Alexander Leslie | | Male | Black | Non-Hispanic | 11-28-58 | 55 | 6'2 | 150 |

SUBJECT'S ADDRESS (Street, City, State, & Zip Code)
**_ _ Lafayette Ave Nashville, TN 37203**

| 29. RES. PHONE NO. | 30. BUS. PHONE NO. |
|---|---|
| ( ) N/A - | ( ) N/A - |

31. SUBJECT'S LEVEL OF RESISTANCE  ☐ NO RESISTANCE  ☒ PASSIVE RESISTANCE  ☐ ATTEMPT TO FLEE ESCAPE  ☐ ACTIVELY RESISTED ARREST
☐ ACTIVELY RESISTED ARREST & INCITED BYSTANDERS  ☐ ASSAULTED OFFICER PHYSICALLY  ☐ ASSAULTED OFFICER WITH A WEAPON  ☐ OTHER (DESCRIBE IN NARRATIVE)

32. SUBJECT ARMED WITH ( ☒ NONE )
☐ BLUNT INSTRUMENT  ☐ CUTTING INSTRUMENT  ☐ ROCK / BOTTLE  ☐ HANDGUN  ☐ RIFLE / SHOTGUN  ☐ VEHICLE  ☐ OTHER

33. SUBJECT'S INJURIES (DESCRIBE THE SPECIFIC TYPE(S) AND BODY LOCATION OF INJURIES)
Canine bite to upper portion of left arm and forearm.

33A. RESULT OF OFFICER'S USE OF FORCE  ☒ YES  ☐ NO

| 34. TYPE AND LOCATION OF MEDICAL TREATMENT | 34A. ANY PRE-EXISTING MEDICAL CONDITION(S)? | 35. CHEMICAL SPRAY AFTERCARE FURNISHED |
|---|---|---|
| Meharry General Hospital, Nashville TN | ☐ YES  ☒ NO  LIST: | ☐ YES  ☐ NO  ☒ N/A |

## WITNESS INFORMATION

☒ N/A    ☐ OTHER WITNESSES CONT. IN NARRATIVE

36. WITNESS #1 NAME (Last, First, Middle) (If applicable, employee no.)  ☐ N/A    37. RESIDENCE ADDRESS (Street, City, State, & Zip Code)

| 38. SEX | 39. RACE | 40. D.O.B. | 41. RESIDENCE TELEPHONE NO. | 42. BUSINESS TELEPHONE NO. | 43. BUSINESS ADDRESS (Street, City, State, & Zip Code) |
|---|---|---|---|---|---|
| | | | ( ) - | ( ) - | |

44. WITNESS #2 NAME (Last, First, Middle) (If applicable, employee no.)  ☐ N/A    45. RESIDENCE ADDRESS (Street, City, State, & Zip Code)

| 46. SEX | 47. RACE | 48. D.O.B. | 49. RESIDENCE TELEPHONE NO. | 50. BUSINESS TELEPHONE NO. | 51. BUSINESS ADDRESS (Street, City, State, & Zip Code) |
|---|---|---|---|---|---|
| | | | ( ) - | | |

## INCIDENT INFORMATION

52. TYPE OF ORIGINAL CALL OR OCCURRENCE
Burglary of a residence

53. SWAT CALL  ☐ YES  ☒ NO

| 54. SUPERVISOR NOTIFIED | DATE/TIME 01 , 08 , 14 1502 HRS | DID SUPERVISOR RESPOND TO SCENE? | DID SUPERVISOR INTER-VIEW INVOLVED PARTIES? | DID SUPERVISOR WITNESS INCIDENT? | EMPLOYEES SECTOR / DIVISION COMMANDERS NAME |
|---|---|---|---|---|---|
| ᵇ ᵉ NG: Sgt. Chris Warner 226918 | | ☒ YES  ☐ NO | ☒ YES  ☐ NO | ☐ YES  ☒ NO | Capt. D. Jones |

55. ᴾHOTOGRAPHS OF OFFICER INJURIES  ☐ YES  ☒ NO    56. PHOTOGRAPHS OF SUSPECTS INJURIES  ☐ YES  ☒ NO

LOCATION WHERE FILED / STORED    LOCATION WHERE FILED / STORED

| 57. CRIMINAL CHARGES FILED ? TYPE OF CHARGES | 58. TRANSPORTING OFFICER (IF DIFFERENT FROM ABOVE) |
|---|---|
| ☒ YES  ☐ NO  Aggravated Burglary | NAME & EMPLOYEE # NFD/ Off. Harris Smith 134879 |

Case 3:15-cv-00019   Document 102   Filed 11/15/17   Page 32 of 42 PageID #: 604

Officer:                                        833056:          Case Report #:
CHRISTINE OLSON                                 839056           140026705

Date: 01/10/2014     Time: 07:18     File(s) path: I:\Crime2014\Wpatrol\1400267


140026705-122.JPG


140026705-123.JPG


140026705-124.JPG


140026705-125.JPG


140026705-126.JPG


140026705-127.JPG


140026705-128.JPG


140026705-129.JPG


140026705-130.JPG


140026705-131.JPG




140026705-132.JPG


140026705-133.JPG


140026705-134.JPG


140026705-135.JPG


140026705-136.JPG




140026705-137.JPG


140026705-138.JPG


140026705-139.JPG


140026705-140.JPG





140026705-141.JPG

The information contained herein is the exclusive property of YOUR AGENCY NAME and is not to be
reproduced or distributed to unauthorized persons under penalty of law.

Sign Here _____

Police Central Evidence Process , Contact Sheet       Page 8 of 9

Officer:                          833055:            Case Report #:
CHRISTINE OLSON                   839056             140026705

Date: 01/10/2014    Time: 07:18    File(s) path: I:\Crime2014\Wpatrol\1400267



140026705-142.JPG   140026705-143.JPG   140026705-144.JPG   140026705-145.JPG   140026705-146.JPG

140026705-147.JPG   140026705-148.JPG   140026705-149.JPG   140026705-150.JPG   140026705-151.JPG

140026705-152.JPG   140026705-153.JPG   140026705-154.JPG   140026705-155.JPG   140026705-156.JPG

140026705-157.JPG   140026705-158.JPG   140026705-159.JPG   140026705-160.JPG   140026705-161.JPG

The information contained herein is the exclusive property of YOUR AGENCY NAME and is not to be
reproduced or distributed to unauthorized persons under penalty of law.
Sign Here

# Metropolitan Nashville Police Department
## West Precinct



## SUPPLEMENT REPORT

CASE # 2014-0026705

VICTIM: **Connerth, Peter**

OFFENSE: Aggravated Burglary

REPORT DATE: 01/13/2014

On 01/08/2014 I responded to 2111 Fairfax Ave to begin investigating a K-9 apprehension. The suspect was charged with aggravated burglary, attempted motor vehicle theft, and possession of burglary tools. Also recovered from the scene was a gray bag that contained items that have been confirmed as stolen from a second burglary. As part of the investigation into the burglary I interviewed K-9 officer Spencer Harris. I also briefly spoke to the suspect Alexander Baxter. Baxter's interview was conducted by Detective Kevin Taylor. The interview was recorded.

**Summary of Interview with Officer Spencer Harris**
Harris responded to the area of Fairfax Ave and Calhoun Ave to assist with the apprehension of a suspect from an aggravated burglary. The suspect had been followed by the witness who originally made the call for service. While speaking with officers on the phone aviation was able to locate the suspect as he attempted to flee the scene. The suspect was observed by aviation running between the residences at 2111 Fairfax Ave and 2113 Fairfax Ave. The suspect was not observed exiting the area. Aviation did observe the suspect remove his jacket prior to running between the houses. K-9 officer Brad Bracey and Spencer Harris arrived at the 2111 Fairfax Ave. Patrol officers had been in the area and the suspect had not exited the area that he was observed running into by aviation. Officer Bracey and Officer Harris entered the area between the residences, and observed a jersey on the ground near an entrance to the basement of 2111 Fairfax Ave. The ground around the entrance had been disturbed and the dirt was kicked away from the entrance. Officer Bracey and Harris both made an announcement "Metro police K-9 come out or a dog will be used to find you".. Officer Harris retrieved his partner K-9 IWO. Iwo was placed in the basement and found the suspect attempting to hide behind a water heater. The suspect was bitten in the upper torso near his left armpit. The suspect had to been told to show his hands, which he eventually complied to this verbal command. Officer Harris ordered his partner K-9 IWO to disengage from the suspect after his hands were in view and the suspect was complying. Officer Bracey joined Officer Harris in the basement and assisted in searching the suspect for weapons. The suspect was then handed over to patrol officers to be placed into custody.

**Summary of interview with Alexander Baxter**
Alexander Baxter was interviewed by Detective Taylor. Baxter would not admit to the burglary during the interview Baxter did state that he was a thief who would not hurt anyone. Baxter would not state anymore facts about the incident.

I responded to 2111 Fairfax Ave to observe the apprehension location. There was a jersey that was on the ground near the air condition unit. The dirt was disturbed around the entrance to the basement, and the opening had been opened. On the other side of 2111 Fairfax Ave there was a jacket and a baseball hat that was on the ground near the bushes. These items matched the description of the items being worn by the suspect as he fled. ID officer Matson photographed and collected the clothing that was found outside the house. Officer Matson also photographed and collected the t-shirt from inside the basement were the apprehension occurred.

Detective Anthony Chandler
West Precinct

2

## AUTHORIZATION TO DISCLOSE MEDICAL INFORMATION OR RECORDS

By signing below, I hereby request and authorize _NASHVILLE GENERAL HOSPITAL_ ("Health Care Provider") to disclose any and all medical information and records, or true and correct copies thereof, in its possession, custody, or control, including, but not limited to, medical histories, records, reports, summaries, diagnosis, prognoses, records of treatment and medication ordered and/or given, entries, letters or correspondence to other physicians, electrocardiograms, x-ray films and reports, laboratory data and records, incident reports, birth certificates, death certificates, and all other written or graphic data prepared, kept, made, or maintained in its possession, custody, or control and summaries of injuries, treatment, and prognosis, if requested (the "Health Information"), that pertain to _Alexander Baxter_. I understand that the Health Information may include information relating to psychological or psychiatric impairments, drug abuse, alcoholism, sickle cell anemia, or HIV infection.

I authorize the Health Care Provider to disclose the Information to Keli J. Oliver, Assistant Metropolitan Attorney, or his/her representative, the Metropolitan Department of Law, or to any representative, attorney, or investigators from said department. I understand that I am not required to sign this Authorization. The Health Care Provider will not condition treatment, payment, enrollment, or eligibility for benefits on whether I sign this Authorization.

This authorization will expire upon the final resolution of the civil matter involving Spencer Harris, Brad Bracey and Alexander Baxter, District Court for the Middle District of Tennessee, Docket No. 3:15-cv-19. I understand that I may revoke this Authorization at any time prior to the expiration date or event, but that my revocation will not have any effect on the actions taken by the Health Care Provider, its employees, or agents before they received my revocation. Should I desire to revoke this Authorization, I must send written notice to the Health Care Provider at this address.

A photocopy, fax, or electronically transmitted version of this release shall have the same force and effect as the original.

I understand that the Information may be subject to disclosure by the recipient and may no longer be protected by federal privacy regulations.


_Aleck L. Baxter_                          _2-2-17_
Signature of Alexander Baxter                Date


_11-28-58_                                  _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_
Patient's Date of Birth                     Patient's Social Security Number

[XXXXX][1.1]

9-18-17

MEMORANDUM:

TO:        CLERK, U.S. District Court

FROM:    Alexander Baxter,  Case No. 3:15-0019

SUBJECT:  Blank Subpoenas

DATE:     September 18, 2017

Dear Court Clerk,

I am an inmate proceeding pro se in the above-entitled action. I am requesting to be provided with blank subpoena forms so that I can fill them out and mail back in, and that they issue forth pursuant to Rule 45 of the Federal Rules of Civil Procedure. Thank you very much. Please send 8.

Respectfully,
Alph S. Lypten  9-18-17

Certificate of Service:

Melissa Roberge & Keli Oliver, Asst. Metro Attys.
108 Metro Courthouse
P.O. Box 196300
Nashville, TN 37219-6300              xc: pro se file

To: STEVE ANDERSON, Chief of Police
Metropolitan Nashville Police Department
200 James Robertson Parkway
Nashville, TN 37201

5-1-14

From: Alexander L. Baxter, OCA # 68360
Davidson County Sheriff's Office
P.O. Box 196383
Nashville, TN 37219

Re: Citizen Complaint / Administrative Appeal / Excessive Force

Dear Chief Anderson,

Please be advised that I am in receipt of a letter from K-9 Sgt. Chris Warner, dated April 9, 2014, exonerating Officer Harris at this level of this complaint. Pursuant to the Prison Mailbox Rule, the letter was received by me on April 29, 2014. This timely response follows. The reply submitted by Sgt. Warner failed to mention a second officer present who participated and/or acquiesced and/or failed to intervene to stop a malicious and deliberate K-9 assault and attack. The complaint is against both officers.

Please be further advised that this correspondence represents an exhaustive appeal in this action. Once again, it was called a K-9 apprehension, yet there were no bites on my legs, no bites on my arms, nor were there any bites on my hands or any other part of my body. The only bites I had were under the pit of my arm. That's because I was completely surrounded, at gunpoint, sitting on the ground frozen still with my hands raised in the air. The response found such actions to be "... consistent with Metro Police Departmental Policy..."

Submitted respectfully,

Alexander L. Baxter 5-1-14
Mr. Alexonder L. Baxter

xc: Mayor Karl Dean
Office of Professional Accountability
Bobby Leggs, Board of Directors, NAACP
United States District Court, Middle District of Tennessee
Eddie Maze, Attorney at Law
Sgt. Chris Warner, MNPD

February 7, 2014

Office of Professional Responsibility / Accountability of MNPD
1417 Murfreesboro Rd.
Nashville, TN 37219

Alexander L. Baxter # 458160
DCSO
P.O. Box 196383
Nashville, TN 37219

RE: Complaint for Use of Excessive Force w/ Serious Bodily Injury

Dear OPR,

Please find enclosed my SWORN Declaration making oath to the facts I have listed therein. I will admit that I ran and hide in the basement of a house, but it was during broad daylight with windows uncovered all around. Officers came into the basement and I saw the dog RUNNING around free, but once they found me the dog went to the K-9 officer. As I sat on the ground with my hands raised in the air, the K-9 officer deliberately released the dog to attack me. Then he stood and watched as the dog ripped my flesh open. DCSO got pictures.

I was apprehended in the beam of their flashlights with my hands raised high in the air. There was no reasonable reason to release the dog, and it was NOT justified by any legitimate purpose. To release the dog, then stand and watch as it attacked me was malicious and sadistic and, I believe, was a criminal act.

In closing, please allow me to thank you for your time and attention to this matter. I have NEVER contacted the office of Professional Accountability before, so would you please let me know the correct procedure. Thank you again, and I will look forward to hearing back from you at your earliest possible convenience. I am requesting to be compensated and the officers punished.

Very truly yours,

Alfred L. Baxter  2-7-14

To: Metropolitan Nashville Police Department
Internal Affairs
500 James Robertson Parkway
Nashville, TN 37219

i.e. Complaint for use of
Excessive Force ;
Serious Bodily Injury

(Jury Demand)

---

## SWORN AFFIDAVIT OF ALEXANDER L. BAXTER

I, Alexander L. Baxter, acting under penalty of perjury do hereby swear, affirm and make oath to the following:

1) That on January 8, 2014, I was arrested by officers of the Nashville Police Department (MNPD);

2) That during the arrest, I was attacked by a K-9 dog released by MNPD officers;

3) That during the arrest I was completely surrounded, at gunpoint, yet while I sat on the ground, frozen still, with my hands raised in the air, a MNPD officer released the dog to attack me after I had surrendered, causing the dog to lunge at me and bitting me under my armpit;

4) That I received serious bodily injury while MNPD stood and watched as the dog attacked me.

Aldph L. Baxter   2-27-13

---

### Notary Public

Sworn to and subscribed before me on the 27th day of February, 2014.

My commission expires: _____

Notary Signature: _____

CASSIE B. OLIVER
STATE OF TENNESSEE
NOTARY PUBLIC
DAVIDSON COUNTY
MY COMMISSION EXPIRES
May 5, 2015

Alexander L. Baxter #145056
140 Macon Way
Hartsville, TN 37074



US POSTAGE
$02.45⁰
First-Class
Mailed From 37074
11/13/2017
032A 0061842601

Clerk, United States District Court
800 Broadway Street
Nashville, TN 37203

RECEIVED
IN CLERK'S OFFICE

NOV 1 5 2017

U.S. DISTRICT COURT
MID. DIST. TENN.